JACKSON LEWIS LLP
59 Maiden Lane
New York, New York 10038
(212) 545-4000
Attorneys of Record for Defendant:
    Felice B. Ekelman (FE 5692)
    Allison C. Spivak (AS 1628)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYDIA GARCIA,<br><br>                      Plaintiff,<br><br>- against -<br><br>HENRY STREET SETTLEMENT,<br><br>                      Defendant. | 05 Civ. 10188 (RWS)(FM) |

## STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of this Court, Defendant Henry Street Settlement ("Defendant" or "Henry Street") respectfully submits this Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment.

### A. Background.

1. Plaintiff is a Hispanic female. (Complaint ¶14).[1]

2. Plaintiff's Complaint alleges that Defendant discriminated against Plaintiff based upon her race (Hispanic) when it eliminated her position in connection with a department-wide reduction in force. (Complaint ¶35; Pl. Tr., p. 8).[2]

---

[1] References to Plaintiff's Complaint are cited herein as "Complaint ¶__." Plaintiff's Complaint is attached as Exhibit "A" to the December 27, 2006 Affidavit of Felice B. Ekelman, Esq. in Support of Defendant's Motion for Summary Judgment ("Ekelman Aff.") submitted herewith.

3.  Defendant is a not-for-profit organization, which provides housing and employment assistance to its clients. (Pl. Tr., p. 79; Drayton Tr., p. 26)[3]

4.  Verona Middleton-Jeter is Henry Street's Executive Director. (Middleton-Jeter Aff., ¶1).[4]

5.  Generia Armstrong is Henry Street's Deputy Program Officer for Homeless and Transitional Services. (Armstrong Tr., p. 5).[5]

6.  Frances Drayton is the Director of Henry Street's Battered Women's Program ("BWP"). (Drayton Tr., p. 6).

7.  Ms. Drayton reports to Ms. Armstrong. (Drayton Tr., p. 6).

8.  Angela George is the Associate Director for the Homeless Program. (George Tr., p. 6).

9.  Ms. George reports to Ms. Armstrong. (George Tr., p. 8).

10. During her tenure with Defendant, Plaintiff received a copy of Defendant's handbook, which includes Defendant's at-will employment and EEO statements. (Pl. Tr., p. 90)

## B. Plaintiff's Employment With Defendant.

11. Defendant employed Plaintiff from March 1978 until February 2005 when Plaintiff's position was eliminated in connection with a department-wide reduction in force and restructuring. (Complaint ¶¶14, 31; Armstrong, Tr., p. 11).

---

[2] References to Plaintiff Lydia Garcia's October 5, 2006 deposition transcript are cited herein as "Pl Tr., p. __." Relevant excerpts from Plaintiff's deposition transcript are attached as Exhibit "B" to Ekelman Aff.
[3] References to Francis Drayton's October 16, 2006 deposition transcript are cited herein as "Drayton Tr., p. __." Relevant excerpts from Ms. Drayton's deposition transcript are attached as Exhibit "D" to the Ekelman Aff.
[4] References to the December 27, 2006 Affidavit of Verona Middleton-Jeter in Support of Defendant's Motion for Summary Judgment submitted herewith are cited herein as "Middleton-Jeter Aff.,¶__"
[5] References to Generia Armstrong's October 16, 2006 deposition transcript are cited herein as "Armstrong Tr., p. __." Relevant excerpts from Ms. Armstrong's deposition transcript are attached as Exhibit "C" to the Ekelman Aff.

12. In or around March 1978, Anna Lucena, Office Manager, and Daniel Kronenfeld, Director of the Urban Family Center, hired Plaintiff to be a part-time weekend receptionist, the position Plaintiff first held with Defendant. (Pl. Tr., pp. 8-9).

13. Approximately three (3) months later, Ms. Lucena and Mr. Kronenfeld promoted Plaintiff to full-time receptionist. (Pl. Tr., p. 9).

14. Mr. Kronenfeld next promoted Plaintiff to Assistant Office Manager. (Pl. Tr., pp. 11-12).

15. Plaintiff was next promoted to Case Manager by Ms. Middleton-Jeter and Milagros Guzman, Assistant Director of the BWP. (Pl. Tr., p. 13).

16. Plaintiff thereafter held the position of Intake Worker. (Pl. Tr., pp. 15, 19).

### C. Plaintiff's Tenure In The Mail Services Program.

17. In or around 2001, Ms. Middleton-Jeter promoted Plaintiff to Assistant Business Manager of the Mail Services Program ("MSP"). (Pl. Tr., p. 17; Middleton-Jeter Aff., ¶6).

18. The MSP trained Henry Street clients, also referred to as interns, for basic job skills and provided job placement. (Pl. Tr., pp. 17-18, 40; Middleton-Jeter Aff., ¶11).

19. Plaintiff held that position until the elimination of her position in or around February 2005. (Pl. Tr., p. 22).

20. Prior to the elimination of Plaintiff's position, Plaintiff reported to Charles Gordon (Caucasian), Business Manager of the MSP. (Pl. Tr., p. 23)

3

21.     In 2005, in addition to Plaintiff and Mr. Gordon, the MSP had two (2) other staff: a Driver, Sigfredo Mendez (Hispanic); and a Mail Clerk Trainee, Catherine Anifantis (Native American). (Pl. Tr., pp. 24-25).

### D.     On May 13, 2004, Plaintiff Was Issued A Written Warning.

22.     On May 7, 2004, a Henry Street client submitted a written letter in which she complained that Plaintiff consistently spoke Spanish to Henry Street clients and employees who also spoke English, causing her and others to feel uncomfortable and disrespected. (Drayton Tr., pp. 17-20, 49; Ekelman Aff., Exh. "F").

23.     As a result of the May 7 written complaint, and the other verbal complaints, on May 13, 2004, Ms. Drayton issued Plaintiff a written warning ("warning") counseling her against inappropriately speaking Spanish in the workplace. (Drayton Tr., pp. 49-51; Ekelman Aff., Exh. "G").

24.     When Ms. Drayton issued the warning to Plaintiff, she explained that a client had complained about Plaintiff's use of Spanish in the workplace. (Pl. Tr., p. 49).

25.     Plaintiff informed her co-worker, Jeanette, about the warning. Jeanette told Plaintiff that she too had been verbally counseled not to speak Spanish in the workplace. (Pl. Tr., pp. 61-62).

26.     Plaintiff also discussed the warning with her other Hispanic co-workers because she "didn't know why [she] was written up." (Pl. Tr., p. 64).

27.     Plaintiff never obtained clarification as to why she received the warning. (Pl. Tr., p. 64).

28.     There was never a problem when Plaintiff spoke Spanish to translate for clients. (Drayton Tr., p. 38).

4

29. Problems arose when Plaintiff addressed a group of clients in Spanish and was not translating for anyone. (Drayton Tr., pp. 38-39).

30. Ms. Drayton personally observed Plaintiff speaking Spanish to a group that included non-Spanish speaking employees and clients. (Drayton Tr., p. 23).

31. Ms. Drayton received both oral and written complaints from MSP clients that Plaintiff spoke Spanish to bilingual clients. (Drayton Tr., pp. 10-12).

32. Plaintiff was not suspended, nor was her compensation affected as a result of the warning. (Pl. Tr., pp. 72-73).

33. The warning did not lead to further discipline. (Pl. Tr., pp. 72-73).

34. In fact, it "was the last written warning [Plaintiff] ever received." (Pl. Tr., p. 73).

35. On the day following Plaintiff's receipt of the warning, Plaintiff signed a petition addressed to Ms. Middleton-Jeter voicing concern that employees were not permitted to speak Spanish in the workplace. (Pl. Tr., p. 65; Ekelman Aff., Exh. "H").

36. Plaintiff does not know who drafted the petition. (Pl. Tr., p. 66)

37. Ms. Drayton was copied on the petition. (Pl. Tr., p. 115)

38. Nineteen (19) employees signed the petition, but not all Spanish-speaking or Hispanic employees in Shelter Services signed the petition. (Pl. Tr., p. 70; Ekelman Aff., Exh. "H").

39. In response to the petition, Ms. Armstrong held a meeting with the signatories to the petition. (Pl. Tr., p. 113).

40. Plaintiff attended this meeting. (Pl. Tr., p. 113).

41. During this meeting, Ms. Armstrong explained that Defendant's practice was that employees could speak Spanish in the workplace. (Pl. Tr., p. 117).

42. However, she explained that if an employee was in a public area, the employee should speak English. (Pl. Tr., p. 117).

43. All Henry Street employees speak English. (Pl. Tr., p. 117).

44. After the meeting with Ms. Armstrong, Plaintiff understood Defendant's rule regarding speaking Spanish in the workplace to be that if it was necessary for her to speak Spanish to a client, she was able to do so, but otherwise she should speak English. (Pl. Tr., p. 118).

45. At the time Plaintiff's position was eliminated, "all the other people who signed the petition were still employed" by Henry Street. (Pl. Tr., p. 67).

46. At the time of her deposition, Plaintiff did not believe that any other employee who signed the petition had been terminated. (Pl. Tr., p. 67).

47. Plaintiff does not believe Ms. Armstrong discriminated against any Hispanic employee other than Plaintiff. (Pl. Tr., p. 91).

### E. The Decision To Eliminate Plaintiff's Position.

48. Prior to the elimination of Plaintiff's position, the MSP was funded by three sources: (1) a grant from the Department of Housing and Urban Development ("HUD"); (2) the BWP, which was a contract from the New York City Human Resource Administration; and (3) income from other contracts the MSP had in connection with its mail presort business. (Complaint ¶¶22, 30, 31; Armstrong Tr., p. 11; Middleton-Jeter Aff., ¶10).

49. In late 2004, HUD informed Henry Street that it would not renew the grant, which funded the MSP. (Middleton-Jeter Aff., ¶12)

6

50. In late 2004 and early 2005, income generated by the MSP's business declined. (Armstrong Tr., pp. 12-13; Middleton-Jeter Aff., ¶13).

51. Once the MSP lost HUD funding, Henry Street was constrained to restructure the program. (Armstrong Tr., p. 18; Middleton-Jeter Aff., ¶15).

52. After examining the sources of funding, income, costs and expenses to the MSP, Ms. Middleton-Jeter determined Defendant's continued budgetary constraints mandated the elimination of the Assistant Business Manager and Driver positions from the MSP because the duties performed by the employees in these positions could be assumed by other employees. (Middleton-Jeter Aff., ¶¶15, 16).

53. As a result, on January 21, 2005, Ms. Armstrong informed Plaintiff that the Assistant Business Manager and Driver positions would be eliminated from the MSP due to the loss of HUD funding. (Pl. Tr., pp. 84-86).

54. Just prior to the elimination of Plaintiff's position, Mr. Mendez, the MSP Driver, resigned from Henry Street. (Pl. Tr., pp. 26-27).

55. At the time Henry Street eliminated Plaintiff's position, it also eliminated the Driver position from the MSP. (Armstrong Tr., p. 18).

56. Plaintiff was not replaced; rather her job duties were assumed by Charles Gordon, Business Manager and Catherine Anifantis, Mail Clerk Trainee, the other two MSP employees. (Middleton-Jeter Aff., ¶17).

57. Mr. Mendez's position was not replaced. His job duties were assumed by two (2) other drivers, both of whom are also Hispanic. (Pl. Tr., p. 27; Middleton-Jeter Aff., ¶¶18, 19).

58.    The funds saved from the retrenchment of Plaintiff's and the Driver's positions were redistributed within the MSP. (Armstrong Tr., p. 28)

### F.    The Henry Street Board Of Directors Was Subsequently Constrained To Close The Entire Mail Services Program.

59.    Subsequent to the elimination of Plaintiff's position in February 2005, income to the MSP continued to decline. (Middleton-Jeter Aff., ¶20)

60.    Because the MSP continued to operate at a loss, in or around June 2005, the entire MSP was closed. (Pl. Tr., pp. 81, 83; Armstrong Tr., p. 19; Middleton-Jeter Aff., ¶21)

61.    As a result, both Mr. Gordon's and Ms. Anifantis' positions were eliminated and their employment terminated. (Pl. Tr., pp. 83-84; Middleton-Jeter Aff., ¶22).

62.    To date, none of the MSP positions have been replaced and the MSP remains closed. (Middleton-Jeter Aff., ¶23).

### G.    Plaintiff's Allegations Of Discrimination.

63.    The individuals Plaintiff believes discriminated against her are Ms. Drayton and Ms. Armstrong. (Pl Tr., pp. 46-47).

64.    Specifically, Plaintiff believes Ms. Drayton discriminated against her by issuing her the May 13, 2004 warning and monitoring Plaintiff's conduct with respect to speaking Spanish in the workplace. (Pl. Tr., pp. 46-47).

65.    Plaintiff believes Ms. Armstrong discriminated against her by signing the warning. (Pl Tr p. 47).

66.    Plaintiff does not have any other facts to support her belief that these women discriminated against her. (Pl Tr p 47).

67    Plaintiff does not believe anyone else associated with Henry Street discriminated against her. (Pl. Tr., p. 46).

8

68. Ms. Middleton-Jeter was responsible for the decision to eliminate Plaintiff's position. (Middleton-Jeter Aff., ¶15)

69. Plaintiff does not believe Ms. Middleton-Jeter discriminated against her. (Pl. Tr., pp. 46-47).

70. Plaintiff does not believe that either Ms. Armstrong or Ms. Drayton discriminated against anyone else at Henry Street. (Pl. Tr., pp. 91-92).

### H. Plaintiff Applied For Other Jobs Within Henry Street, Which She Did Not Receive, For Reasons Wholly Unrelated To Her Race.

(i) Housing Specialist Position

71. Plaintiff applied for a Housing Specialist position in the Urban Family Center. (Pl. Tr., p. 137).

72. Plaintiff interviewed for this position with Hector Perez and Ms. George. (Pl. Tr., p. 137).

73. Plaintiff does not have any evidence to support her belief that she was discriminatorily denied this position. (Pl. Tr., pp. 139-40).

74. In fact, Plaintiff was not rejected from the position. (Pl. Tr., p. 137).

75. Elizabeth Ruiz, also Hispanic, was ultimately selected for the Housing Specialist position. (Pl. Tr., p. 139).

76. Ms. Ruiz also signed the petition regarding speaking Spanish in the workplace. (Ekelman Aff., Exh. "H").

77. Plaintiff never followed up as to why she did not get the job. (Pl. Tr., p. 140).

    (ii) <u>Case Manager Position</u>

  78. Plaintiff also applied for the Case Manager position in the Urban Family Center. (Pl. Tr., p 141).

  79. Ms. George told Plaintiff that she did not receive the job because she did not possess a Bachelor's Degree, a necessary prerequisite to be considered for the position. (Pl Tr., p. 141)

  80. Plaintiff does not have a Bachelor's Degree. (Pl. Tr., p. 16).

  81. Nilsa Fiol was hired for the Case Manager position. (George Tr., p. 38).

  82. Ms. Fiol has a Bachelor's Degree. (George Tr., p. 39).

  83. Plaintiff does not believe the denial of this position was discriminatory. (Pl. Tr., p. 141).

    (iii) <u>Clerical Position</u>

  84. Plaintiff also submitted an application for a clerical position at the Abrams Art Center. (Pl. Tr., p. 142).

  85. She did not receive the position and never followed up regarding the reasons why she did not receive the position. (Pl. Tr., p. 142).

  86. Plaintiff does not know if the job was ever filled. (Pl. Tr., p. 143).

    (iv) <u>Accounts Payable Clerk</u>

  87. Plaintiff applied for an Accounts Payable Clerk position in the Financial Services Department. (Pl. Tr., p. 135).

  88. Plaintiff never interviewed for the Accounts Payable Clerk position because when she applied, she was told the position was to be permanently filled by the intern volunteering in that department. (Pl. Tr, p. 145).

### I. Housing

89. In 1990, Plaintiff began living at the Urban Family Shelter (Pl. Tr., p. 73).

90. From 1998 through June 2006, Plaintiff resided there in a three (3) bedroom apartment. (Pl. Tr., pp. 73-74).

91. Plaintiff provided on-call coverage for Defendant and, as a result, resided there rent-free. (Pl. Tr., p. 73).

92. When Plaintiff's position was eliminated, Plaintiff stopped providing on-call coverage. (Pl. Tr., p. 74).

93. Plaintiff continued to reside there rent-free until January 2006. (Pl. Tr., p. 74)

94. After the elimination of Plaintiff's position, she was asked to leave her apartment. (Pl. Tr., p. 93).

95. Ms. Armstrong offered to allow Plaintiff to live at the Urban Shelter for three (3) months while she looked for an apartment. (Pl Tr., p. 108).

96. Plaintiff did not vacate her apartment until June 2006. (Pl. Tr., pp 74, 79).

                Respectfully submitted,

                JACKSON LEWIS LLP
                  59 Maiden Lane
                  New York, New York 10038
                  (212) 545-4000

By: _____
       Felice B. Ekelman (FE 5692)
       Allison C. Spivak (AS 1628)

ATTORNEYS FOR DEFENDANT
HENRY STREET SETTLEMENT

Dated: December 27, 2006
       New York, New York

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2006, a true and correct copy of the foregoing Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment was served on Plaintiff Lydia Garcia via federal express overnight mail to Plaintiff's counsel of record, Peter S. Romero, Esq., at his office of record, Frank & Associates, P.C., located at 500 Bi-County Boulevard, Suite 112N, Farmingdale, New York 11735.

_____
Allison C. Spivak, Esq.