UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------X

LYDIA GARCIA,

                    Plaintiff,              05 Civ. 10188 (RWS)

         -against-                               OPINION

HENRY STREET SETTLEMENT,

                    Defendant.

----------------------------------X


A P P E A R A N C E S:


          Attorneys for Plaintiff

          FRANK & ASSOCIATES, P.C.
          500 Bi-County Boulevard, 112N
          Farmingdale, NY   11735
          By:   Peter A. Romero, Esq.


          Attorneys for Defendant

          JACKSON LEWIS LLP
          59 Maiden Lane
          New York, NY 10038
          By:   Felice B. Ekelman, Esq.
                Allison C. Spivak, Esq.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/30/07

**Sweet, D.J.**

Defendant Henry Street Settlement ("Henry Street" or the "Defendant") has moved under Rule 56, Fed. R. Civ. P. for summary judgment dismissing the complaint of Lydia Garcia ("Garcia" or the "Plaintiff"). For the reasons set forth below, the motion is granted.

The termination of Garcia, an employee of Henry Street for almost twenty-seven years, was particularly painful since it also ended her residence in Henry Street housing. Nonetheless, Garcia has failed to establish her claims of discrimination and retaliation, and her action must consequently be dismissed.

## Prior Proceedings

On or about April 5, 2005, Garcia filed a Verified Complaint ("Verified Complaint") with the New York State Division on Human Rights ("NYSDHR") alleging that she had been terminated from her employment by Henry Street based on her race. Shortly thereafter, the Verified Complaint was also cross-filed with the Equal Employment Opportunity Commission ("EEOC"). On July 25, 2005, the NYSDHR issued a "No Probable Cause" finding and dismissed Plaintiff's Verified Complaint. On or about November 8, 2005, the

1

EEOC adopted the NYSDHR's findings, dismissing Plaintiff's Charge
of Discrimination and issuing a "Notice of Right To Sue."

Garcia filed her complaint in the instant action (the
"Complaint") on December 5, 2005 alleging violations of Title VII
of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, et
seq. ("Title VII"), the New York State Human Rights Law, Executive
Law § 296, et seq. ("NYSHRL"), and the New York City Human Rights
Law, N.Y. City Admin. Code § 8-101, et seq. ("NYCHRL").  According
to her complaint, Garcia is an Hispanic female, hired initially by
Henry Street in 1978, who was terminated and evicted from her
apartment because of her race. (Compl. ¶¶ 14, 34-51).[1]

On or about March 16, 2006, the Court granted Defendant's
motion to dismiss Plaintiff's second and third causes of action,
discrimination under the NYSHRL and NYCHRL.

Discovery proceeded and the instant motion was marked
fully submitted on February 14, 2007.

---

[1] Plaintiff's complaint alleges only discrimination based on
race.  Garcia, in her opposition to the instant motion, replaces
that allegation with discrimination premised on her national
origin.  This Opinion will adhere to the language of racial
discrimination, since that is what the complaint alleged.  Were
the Court to consider the claims to be grounded in discrimination
based upon national origin, the same results would obtain.

2

**The Facts**

The material facts are not in dispute, except as noted below, and are set forth in the Local Rule 56.1 Statements of Henry Street and Garcia.  Garcia is an Hispanic female.  Her Complaint alleges that Defendant discriminated against her based upon her race when it eliminated her position in connection with a department-wide reduction in force.  According to Garcia, Henry Street also discriminated against her by refusing to place her in one of the open positions for which she applied after she was informed that her existing position was being eliminated.

Henry Street is a not-for-profit organization which provides housing and employment assistance to its clients.  Verona Middleton-Jeter ("Middleton-Jeter") is Henry Street's Executive Director. Generia Armstrong ("Armstrong") is Henry Street's Deputy Program Officer for Homeless and Transitional Services.  Frances Drayton ("Drayton") is the Director of Henry Street's Battered Women's Program ("BWP"), and Angela George ("George") is the Associate Director for the Homeless Program.  Drayton and George both report to Armstrong.  (George Tr., at 8).

During her tenure with Henry Street, Plaintiff received a copy of the Henry Street handbook, which includes Henry Street's

3

at-will employment and equal employment and opportunity statements. (Pl. Tr., at 90).

Henry Street employed Garcia from March 1978 until February 2005. In March 1978, Anna Lucena ("Lucena"), Office Manager, and Daniel Kronenfeld ("Kronenfeld"), Director of the Urban Family Center, hired Garcia to be a part-time weekend receptionist. Approximately three months later, Lucena and Kronenfeld promoted her to full-time receptionist. Kronenfeld next promoted her to Assistant Office Manager. Middleton-Jeter and Milagros Guzman ("Guzman"), Assistant Director of the BWP, next promoted her to Case Manager. Garcia thereafter held the position of Intake Worker. (Pl. Tr., at 13, 15, 19).

In 2001, Middleton-Jeter promoted Garcia to Assistant Business Manager of the Mail Services Program ("MSP"). The MSP provided job training and placement to Henry Street clients, who are also referred to as interns. Garcia served as Assistant Business Manager of MSP until the elimination of her position in or around February 2005. She reported to Charles Gordon ("Gordon"), Business Manager of the MSP, who is Caucasian.

In 2005, in addition to Garcia and Gordon, the MSP had two other staff members: a Driver, Sigfredo Mendez (who is

4

Hispanic); and a Mail Clerk Trainee, Catherine Anifantis (who is Native American).

On May 7, 2004, a Henry Street client submitted a written letter in which she complained that Garcia consistently spoke Spanish to Henry Street clients and employees who were bilingual in English and Spanish, causing the complaining client and others who did not speak Spanish to feel uncomfortable and disrespected.   On May 13, 2004, Drayton issued Plaintiff a written warning counseling her against inappropriately speaking Spanish in the workplace. When Drayton issued the warning, she explained that a client had complained about Plaintiff's use of Spanish in the workplace. Garcia informed her co-worker, Jeanette, about the warning and Jeanette told Garcia that she too had been verbally counseled not to speak Spanish in the workplace.

Garcia also discussed the warning with her other Hispanic co-workers because she "didn't know why [she] was written up" and because she disagreed with the policy against speaking Spanish. (Pl. Tr., at 64).

According to Henry Street, no problem was presented when Garcia spoke Spanish to translate for clients.   Garcia was reprimanded for speaking Spanish only when doing so was unnecessary

5

for communication.   Drayton cited her for speaking Spanish to the
entire group during meetings, but admitted that Garcia was
translating for Drayton to non-English-speaking interns.   Garcia
was permitted to speak Spanish to English-speaking interns only in
her office behind closed doors.

According to Henry Street, problems arose when Garcia
addressed a group of clients in Spanish and was not translating for
anyone.   According to Drayton, she personally observed Garcia
speaking Spanish to a group that included non-Spanish speaking
employees and clients.   Drayton received both oral and written
complaints from MSP clients that Plaintiff spoke Spanish to
bilingual clients.   According to Garcia, prior to the issuance of
the warning she was not advised that speaking Spanish was a
problem.

Plaintiff was not suspended, nor was her compensation
affected as a result of the warning.   The warning did not lead to
further discipline.   According to Garcia, she was monitored daily,
and the policy caused her to feel inferior, embarrassed and
insecure.   On the day following Garcia's receipt of the warning,
she signed a petition addressed to Middleton-Jeter voicing concern
that employees were not permitted to speak Spanish in the
workplace.

6

Garcia does not know who drafted the petition.  According
to Garcia, both George and Armstrong received copies.  Nineteen
employees signed the petition, but not all Spanish-speaking or
Hispanic employees signed the petition.

In response to the petition, Armstrong held a meeting
with the signatories to the petition, which Garcia attended.
During this meeting, Armstrong explained that Henry Street practice
was to allow employees to speak Spanish in the workplace, except
when the employee was in a public area, in which case she should
speak English.

After the meeting with Armstrong, Garcia understood
Defendant's rule regarding speaking Spanish in the workplace to be
that she should only speak in Spanish to a client if it was
necessary to do so.

All Henry Street employees speak English, although,
according to Garcia, some participants in the program had limited
proficiency in English.  Gordon has claimed that he was unaware
that speaking Spanish was an issue until Middleton-Jeter became
Executive Director.  Gordon also testified that Middleton-Jeter
accused one of Henry Street's clients of speaking Spanish despite
possessing the ability to speak English.  "Don't give me that

7

Spanish mumbo-jumbo.    Yous [sic] all understand English,"
Middleton-Jeter allegedly told a client.   (Gordon Tr., at 18).

At the time Garcia's position was eliminated, "all the
other people who signed the petition were still employed" by Henry
Street.   (Pl. Tr., at 67).   At the time of her deposition, Garcia
did not believe that any other employee who signed the petition had
been terminated.   Garcia does not believe Armstrong discriminated
against any Hispanic employee other than herself.

Prior to the elimination of Garcia's position, the MSP
was funded by three sources: (1) a grant from the Department of
Housing and Urban Development ("HUD"); (2) a contract from the New
York City Human Resource Administration which supported the BWP;
and (3) income from other contracts the MSP had in connection with
its mail presort business.

In late 2004, HUD informed Henry Street that it would not
renew the grant which funded the MSP.   In late 2004 and early 2005,
income generated by the MSP's business declined.   After examining
the sources of funding, income, costs and expenses to the MSP,
Middleton-Jeter determined that Henry Street's continued budgetary
constraints mandated the elimination of the Assistant Business
Manager and Driver positions from the MSP because the duties

performed by the employees in these positions could be assumed by other employees.

As a result, on January 21, 2005, Armstrong informed Garcia that her position would be eliminated from the MSP due to the loss of HUD funding. According to Garcia, when Armstrong advised Gordon that Garcia was being terminated due to cutbacks in funding, Gordon offered to take a reduction in salary in order to fund Garcia's position and Armstrong responded, "Money has nothing to do with it." (Gordon Tr., at 26). During the same conversation, Gordon asked Armstrong about finding another position for Plaintiff at Henry Street. Armstrong told Gordon that Garcia would not be given any other position at Henry Street. (Id., at 27).

Just prior to the elimination of Garcia's position, Mendez, the MSP Driver, resigned from Henry Street. At the time Henry Street eliminated Garcia's position, it also eliminated the Driver position from the MSP. Mendez's job duties were assumed by two other Henry Street employees, both of whom are also Hispanic.

Garcia was not replaced; instead, her job duties were assumed by Gordon, Anifantis, the other two MSP employees. The funds saved from the elimination of Garcia's and the Driver's

9

positions were redistributed within the MSP.

Subsequent to the restructuring in February 2005, income derived from the MSP continued to decline and the MSP operated at a loss. In or around June 2005, the entire MSP was closed. As a result, both Gordon's and Anifantis's positions were eliminated and their employment terminated. To date, none of the MSP positions has been replaced and the MSP remains closed.

The individuals Garcia believes discriminated against her are Drayton and Armstrong. Specifically, Garcia believes Drayton discriminated against her by issuing her the May 13, 2004 warning and monitoring Plaintiff's conduct with respect to speaking Spanish in the workplace. Garcia believes Armstrong discriminated against her by signing the warning, and Gordon testified that Armstrong spoke critically of Garcia, stating that Garcia favored Hispanic people. (Gordon Tr., at 26).

Garcia testified that she did not have any facts with respect to discrimination by Armstrong other than the warning. (Pl. Tr., at 47).

Middleton-Jeter was responsible for the decision to eliminate Garcia's position. (Middleton-Jeter Aff., ¶ 15). Garcia

10

does not believe Middleton-Jeter discriminated against her.    (Pl. Tr., at 46).  Garcia testified that neither Armstrong nor Drayton discriminated against anyone else at Henry Street.  (Id., at 47).

Garcia, in February 2005, applied for a Housing Specialist position in the Urban Family Center, and was interviewed by Hector Perez ("Perez") and George. Elizabeth Ruiz ("Ruiz"), who is also Hispanic and was already employed at Henry Street, was ultimately selected for the Housing Specialist position two weeks after Garcia filed her NYSDHR discrimination complaint.  At the interview, Garcia was old that the job was only guaranteed funding through June 2005.  According to George, Garcia did not wish to be considered for the Housing Specialist position after learning of the funding issue, an assertion denied by Garcia.  Garcia testified that she does not have any evidence to support her belief that she was discriminatorily denied this position.  Garcia never spoke to either Perez or George about why she did not get the job.   (Pl. Tr., at 137-40).

In 1990, Garcia began living at the Urban Family Shelter, which is administered by Henry Street.  From 1998 through June 2006, she resided there rent-free in exchange for providing on-call coverage for Defendant.

11

When Garcia's position was eliminated, she stopped providing on-call coverage, but Armstrong offered to allow Garcia to live at the Urban Shelter for an additional three months while she looked for another apartment. Garcia continued to reside there rent-free until January 2006.

## Summary Judgment Standard

In deciding a motion for summary judgment, a court shall render judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

The moving party has the initial burden of showing that there are no material facts in dispute, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), and can discharge this burden by demonstrating that there is an absence of evidence to support the nonmoving party's case, Celotex, 477 U.S. at 325. The nonmoving party then must come forward with "specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), as to

12

every element "essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1187 (2d Cir. 1987); see also Eastway Constr. Corp. v. New York, 762 F.2d 243, 249 (2d Cir. 1985). However, the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there is not, summary judgment is proper. See id. at 249-50.

## Discrimination Has Not Been Established

When the plaintiff asserts that the employer's decision was a pretext for discrimination, courts use the well-known burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793 (1973). First, the plaintiff must prove by a preponderance of the evidence a prima facie case of discrimination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); McDonnell Douglas, 411 U.S. at 802-04; Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003); Weinstock, 224 F.3d at

13

42. Only if the plaintiff meets this initial burden will the burden then shift to the defendant to produce evidence that the adverse employment action was taken for some legitimate, non-discriminatory reason. See Burdine, 450 U.S. at 254-55. If the defendant articulates a legitimate non-discriminatory reason for its action, "the presumption raised by the prima facie case is rebutted, and drops from the case." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (quoting Burdine, 450 U.S. at 255 n.10). Then, the plaintiff has the ultimate burden to demonstrate by a preponderance of the evidence that the articulated reason offered by the defendant for the adverse employment action is merely a pretext for actual discrimination. Mandell v. County of Suffolk, 316 F.3d 368, 380-81 (2d Cir. 2003).

The question for the court on summary judgment is whether the plaintiff's evidence, taken as a whole, establishes a substantial likelihood that the employer intentionally discriminated against the plaintiff. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000); see also Moorehead v. New York City Transit Auth., 385 F. Supp. 2d 248, 253-54 (S.D.N.Y. 2005) (assuming a prima facie case and proceeding directly to the "ultimate issue").

14

## Plaintiff Has Failed to Demonstrate a
## Prima Facie Case of Discrimination

To establish a prima facie claim of discrimination under Title VII, the plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she is qualified for the position and/or satisfactorily performed the duties required by the position; (3) she was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination based upon membership in the protected class. Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000).

Only the fourth requirement is in dispute; here, Defendant has asserted that Garcia has failed to identify facts that raise an inference of discriminatory intent.

In determining whether a plaintiff has satisfied his or her initial burden of showing circumstances giving rise to an inference of discrimination, the function of a court on a summary judgment motion is to determine whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. See Viola v. Phillips Med. Sys. of N. Am., 42 F.3d 712, 716 (2d Cir. 1994). Although the Second Circuit has stated that the burden of establishing a prima facie case is "modest," it has importantly

15

recognized that this burden "has substance nevertheless."   Id.

Here, the only evidence Garcia adduced to support her discrimination claim is her receipt of a single written warning more than nine months prior to the elimination of her position, which did not affect the terms and conditions of her employment or lead to additional discipline.

Garcia testified that Armstrong and Drayton are the only individuals who discriminated against her. (Pl. Tr., at 46).  The basis for Garcia's claim that Drayton discriminated against her is that Drayton issued Plaintiff a written warning for speaking Spanish in the workplace and monitored Plaintiff's conduct with respect to speaking Spanish in the workplace. (Pl. Tr., at 46-47).  The basis for Garcia's belief that Armstrong discriminated against her is her belief that Armstrong signed the warning. (Pl. Tr., at 47).

A single warning received more than nine months prior to the elimination of Garcia's position, is insufficient "to permit a rational finder of fact to infer a discriminatory motive" and thereby to satisfy Plaintiff's prima facie burden.  Viola, 42 F.3d at 716.

16

**<u>Defendant Has Offered a Legitimate,</u>**
**<u>Non-Discriminatory Reason for Termination</u>**

Even if Garcia had established a prima facie case, her claim would ultimately fail. Henry Street has articulated a legitimate, non-discriminatory reason for the challenged adverse employment action, and Garcia has failed to adduce sufficient evidence that the explanation was a mere pretext for unlawful discrimination.

It is well-settled in the Second Circuit that a reduction in force in response to economic and budgetary concerns constitutes a legitimate, non-discriminatory employment action. <u>See, e.g.</u>, <u>Roge v. NYP Holdings, Inc.</u>, 257 F.3d 164, 168 (2d Cir. 2001); <u>Williams v. Home Depot U.S.A., Inc.</u>, 2005 U.S. Dist. LEXIS 22254, at *37-*39 (S.D.N.Y. Sept. 29, 2005).

Here, Henry Street has articulated just such a legitimate explanation: the non-renewal of the grant that funded Garcia's department. <u>See</u> <u>Schnabel</u>, 232 F.3d at 87; <u>Tyler v. Bethlehem Steel Corp.</u>, 958 F.2d 1176, 1180 (2d Cir. 1992), <u>cert. denied</u>, 506 U.S. 826 (1992) ("The defendant's task is merely to articulate (not prove), via admissible evidence, a legitimate reason for the employment decision.").

Once a defendant satisfied its burden of articulating a legitimate, non-discriminatory, business reason for its actions, the defendant is entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000). To satisfy her ultimate burden of persuasion in this regard, the plaintiff must establish by a preponderance of the evidence that the defendant's proffered reasons are a pretext and that the real reason for the alleged adverse employment action was intentional discrimination. See Reeves, 530 U.S. at 143; Schnabel, 232 F.3d at 87.

Here, there is some evidence of pretext consisting of George's testimony that he was told by Armstrong that money had nothing to do with the termination. However, it remains necessary for Garcia to establish that Henry Street's stated reasons were a pretext for intentional race discrimination. See Reeves, 530 U.S. at 146 ("The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.").

Speculation, conjecture and guess-work cannot substitute for actual evidence of discrimination. See Morris v. Northrop Grumman Corp., 37 F. Supp.2d 556, 570 (E.D.N.Y. 1999); Agugliaro v.

18

<u>Brooks Bros., Inc.</u>, 927 F. Supp. 741, 748 (S.D.N.Y. 1996) (it is "incumbent upon the plaintiff to present 'specific facts' -- not conclusory allegations, speculation, surmise or 'feelings' -- to show the existence of genuine issues for trial").

Garcia has not adduced facts which indicate any connection between the warning and the subsequent decision to eliminate Plaintiff's Assistant Business Manager position from the MSP. Nor do the Middleton-Jeter's alleged comments about "Spanish mumbo-jumbo" establish an inference of pretextual termination, since they were not directed at Garcia and no link has been established between the comments and the restructuring of MSP. (Gordon Tr., at 18).

Further, where the individual who made the decision identified by a plaintiff as an adverse employment action is the same person who previously promoted that employee, "it is difficult to impute . . . an invidious motivation," to that individual. <u>Cf. Grady v. Affiliated Cent., Inc.</u>, 130 F.3d 553, 560 (2d Cir. 1997) (applying same-actor inference); <u>Pinkney v. EMI Music Publ'g</u>, 2006 U.S. Dist. LEXIS 59980, at *33-*34 (S.D.N.Y. Aug. 23, 2006) (citing <u>Schnabel</u>, 232 F.3d at 91) (recognizing that application of the same actor inference is appropriate where three years passed between the hiring and firing of the plaintiff).

19

Middleton-Jeter promoted Garcia to the MSP's Assistant Business Manager position in addition to other positions and awarded her raises during her tenure.  Middleton-Jeter also made the decision to eliminate Garcia's position.  (Middleton-Jeter Aff., ¶ 15).  No evidence had been presented that Middleton-Jeter's decision to eliminate Plaintiff's position was based upon Garcia's race.

## Hostile Work Environment Has Not Been Established

A plaintiff may only bring a Title VII claim in federal court if he or she has first filed a timely administrative charge of discrimination with the EEOC or with an appropriate state or local administrative agency.  See Brown v. Gen. Servs. Admin., 425 U.S. 820, 832 (1976); Fitzgerald v. Henderson, 251 F.3d 345, 358-59 (2d Cir. 2001) ("Title VII requires that an employment discrimination claimant pursue administrative procedures before commencing a lawsuit"); Lucenti v. Potter, 432 F. Supp. 2d 347, 356 (S.D.N.Y. 2006).  The purpose of the exhaustion requirement is to give the administrative agency "the opportunity to investigate, mediate, and take remedial action."  Stewart v. United States Immigration and Naturalization Serv., 762 F.2d 193, 198 (2d Cir. 1985).

If, however, the non-exhausted claim is "reasonably related" to the actual claim filed with the EEOC, the exhaustion requirement is deemed met.   Claims are "considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."   Williams v. New York City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (citing Fitzgerald, 251 F.3d at 359-60).

Here, Garcia's NYSDHR Verified Complaint, which was cross-filed with the EEOC, alleged that "[f]rom the inception of this disciplinary memo in May 2004, Ms. Drayton has continued to harass me about speaking Spanish to [Henry Street] clients or co-workers when it was necessary . . . ." (Romero Decl., Ex. L, at 2). Given the relevance of these allegations to Garcia's hostile work environment claim, the claim is deemed exhausted as reasonably related to the EEOC charge.   See Williams, 458 F.3d at 70.

To prevail on a hostile work environment claim, a plaintiff must demonstrate: (1) that his or her workplace was permeated with discriminatory intimidation that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to

the employer." <u>Alfano v. Costello</u>, 294 F.3d 365, 373 (2d Cir. 2002) (quoting <u>Perry v. Ethan Allen, Inc.</u>, 115 F.3d 143, 149 (2d Cir. 1997)) (internal quotation marks omitted).  This test has objective and subjective elements; the misconduct shown must be "severe or pervasive enough to create an objectively hostile or abusive work environment," and the victim must also subjectively perceive that environment to be abusive.  <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993).

Garcia was permitted to speak Spanish in her office. Henry Street's policy allowed her to use Spanish with clients who did not speak English.  Garcia also translated for Spanish-speaking clients.  Armstrong explicitly reinforced this policy upon meeting with the employees who signed the petition criticizing Henry Street's Spanish policy.  (Pl. Tr., at 117).   During Garcia's twenty-seven year tenure with Henry Street, the sum total of all discipline she received for speaking Spanish in the workplace a single written counseling, which was issued only after Henry Street received a written complaint from a client about Garcia's behavior. No evidence was presented that anyone else was subject to discipline for speaking Spanish in the workplace.  This one warning is insufficient to create a workplace "permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions" of Garcia's work environment."

22

<u>Alfano</u>, 294 F.3d at 373.

## Discrimination in the Denial of
## Further Employment Has Not Been Established

Garcia's contention that the denial of the Housing
Specialist position constituted discrimination was raised for the
first time in her opposition to the instant motion.  While the
Complaint mentioned the fact that Garcia was not re-hired, the
Verified Complaint is wholly bereft of any reference to an
application for or denial of any new position with Henry Street.

Henry Street's refusal to hire Garcia for the Housing
Specialist position does not "fall within the scope of the EEOC
investigation which can reasonably be expected to grow out of the
charge that was made." <u>Williams</u>, 458 F.3d at 70.  In determining
whether an allegation is reasonably related to on earlier
administrative complaint, "[t]he central question is whether the
complaint filed with the EEOC gave that agency adequate notice to
investigate discrimination on both bases." <u>Id.</u> (internal quotation
marks omitted).  Here, the Verified Complaint's allegations center
entirely on two points: 1) Drayton's requests that Garcia refrain
from speaking Spanish; and 2) the fact of Garcia's termination from
the MSP position.  (Romero Decl., Ex. L, at 1-2).  Plaintiff
alleged in the Verified Complaint that the discrimination had ended

23

on February 28, 2005.  (Id., at 1).  Nothing in the Verified
Complaint would reasonably have led the EEOC to "investigate,
mediate, [or] take remedial action" with respect to Henry Street's
refusal to re-hire Garcia.  Accordingly, that claim must be
dismissed.  Stewart, 762 F.2d at 198.


        In addition to being procedurally inappropriate, this
claim fails because Garcia testified that she does not have any
evidence supporting her claim that she was discriminated against
when she did not receive the Housing Specialist position.  (Pl.
Tr., at 140).  Ruiz, who is also Hispanic, was hired to fill the
job, further rebutting any inference of discrimination.  See
Randolph v. CIBC World Mkts., 2005 U.S. Dist. LEXIS 4839, at *34
(S.D.N.Y. Mar. 30, 2005) (quoting Morris v. N.Y. City Dep't of
Sanitation, 2003 WL 1739009, at *5 (S.D.N.Y. Mar. 31, 2003))
("Where no evidence giving rise to an inference of discrimination
has been presented, the fact that a plaintiff is replaced with an
individual within his protected class undermines his attempt to
establish a prima facie case of discrimination"); Montanile v.
Nat'l Broad. Co., 211 F. Supp.2d 481, 487 (S.D.N.Y. 2002).


        Garcia has failed to present facts that would lead a
reasonable trier of fact to conclude that the decision not to hire
her for the Housing Specialist position was motivated by racial

                              24

animus.  Accordingly, her claim must be denied.  See <u>Viola</u>, 42 F.3d
at 716.

## **Discriminatory Retaliation Has Not Been Established**

The  final  of  Garcia's  theories  newly  raised  in  her
opposition papers is that she was denied the Housing Specialist
position  in  retaliation  for  either  her  signature  on  the  petition
protesting  Henry  Street's  Spanish-speaking  policy  or  her
administrative complaints regarding the loss of her job with the
MSP.

For  failing  to  allege  any  facts  regarding  the  Housing
Specialist position in her EEOC charge, Garcia is barred from now
pursuing the claim that she was denied that position because of her
petition signature before this Court.  See <u>Brown</u>, 425 U.S. at 832;
<u>Fitzgerald</u>, 251 F.3d at 358-59; <u>Lucenti</u>, 432 F. Supp. 2d at 356.

With  regard  to  retaliation  based  on  her  filing  of  the
NYSDHR/EEOC Verified Complaint, Garcia could not very well have
alleged in her EEOC charge that Henry Street had retaliated to that
very charge.   However, this claim must fail as well because the
Complaint is devoid of any hint of a retaliation claim, whether
premised on the petition or Garcia's administrative complaints.  To

25

the extent such a claim is even before the Court, it must be dismissed for Plaintiff's failure to adequately give notice to Defendant.  See Kendricks v. Westhab, Inc., 163 F. Supp. 2d 263, 270-71 (S.D.N.Y. 2001); see also Fed. R. Civ. P. 8(a); Conley v. Gibson, 355 U.S. 41, 47 (1957); cf. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1966 (2007) (holding that, under Rule 8(a), a complaint's plain statements must "possess enough heft to show that the pleader is entitled to relief.") (internal quotation marks omitted).

Garcia has cited Burford v. McDonald's Corp., 321 F. Supp. 2d 358 (D. Conn. 2004), to support her argument that the retaliation claim is not subject to dismissal despite her failure to plead it in her Complaint. In Burford, the defendant moved for summary judgment as to the plaintiff's retaliation claim because the claim was not pleaded as a separate cause of action. However, as part of Burford's Title VII hostile work environment claim, the complaint stated "[t]he defendant retaliated against the plaintiff for complaining about sexual harassment, and for refusing to accept, tolerate, and live with sexual harassment." Id. at 365. Accordingly, the court found "[w]hile Plaintiff's complaint would undoubtedly have been clearer had her hostile work environment and retaliation claims been pleaded in separate counts, it is clear from the face of the complaint that Plaintiff was alleging that she

26

had been retaliated against . . . and that this retaliation was an
element of her Title VII claim." Id. Here, the Complaint is
devoid of any mention of retaliation.

Furthermore, the retaliation claim would fail even had it
been adequately pleaded. Though the refusal to hire Garcia for the
Housing Specialist position was made not long after she filed her
Verified Complaint with the NYSDHR, there is no evidence to tie
that decision to the Verified Complaint.

In order to establish a prima facie case of retaliation
under Title VII, a plaintiff must show:

> (1) that [she] was engaged in protected activity by
> opposing a practice made unlawful by Title VII; (2) that
> the employer was aware of that activity; (3) that [she]
> suffered adverse employment action; and (4) that there
> was a causal connection between the protected activity
> and the adverse action.

Holtz v. Rockefeller & Co., 258 F.3d 62, 79 (2d Cir. 2001)
(internal citation omitted).

Proof of a causal connection can be demonstrated in three
different ways: "(1) direct proof of retaliatory animus directed
against the Plaintiff, (2) disparate treatment of similarly
situated employees, or (3) that the retaliatory action occurred

27

close in time to the protected activities." McNair v. New York
City Health & Hosp. Co., 160 F. Supp. 2d 601, 604 (S.D.N.Y. 2001)
(citing DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 115
(2d Cir. 1987)). As already noted, Plaintiff has failed to adduce
proof of retaliatory animus directed against her.   Garcia has
likewise provided no evidence of disparate treatment of similarly
situated employees.   However, the temporal proximity of the NYSDHR
complaint and the denial of the Housing Specialist position (Ruiz
was chosen for the job just two weeks after the filing), is
sufficient to establish a prima facie case.   See Davis v. State
Univ. of New York, 802 F.2d 638, 642 (2d Cir. 1986).

        Henry Street has identified a legitimate, non-retaliatory
reason for not hiring Garcia: that she withdrew herself from
consideration upon learning that the position was guaranteed
funding for only three months into the future.   Thus, "the
presumption of retaliation dissipates and the employee must show
that retaliation was a substantial reason for the adverse
employment action."   Jute v. Hamilton Sundstrand Corp., 420 F.3d
166, 173 (2d Cir. 2005).

        Garcia has failed to show any connection between the
Verified Complaint and Henry Street's failure to hire her for the
Housing Specialist position.   As Garcia herself testified, "I don't

28

have evidence to support it, but that's how I feel." (Pl. Tr., at 140). "However, mere conclusory allegations, speculation, or conjecture will not avail a party resisting summary judgment." Morris, 37 F. Supp. 2d at 570. The absence of any evidence supporting the retaliation claim dooms it to fail.

## Conclusion

For the reasons stated above, Defendant Henry Street's motion for summary judgment is granted and the Complaint is dismissed with prejudice.

Submit judgment on notice.

It is so ordered.

**New York, NY**
**July  25  , 2007**

ROBERT W. SWEET
U.S.D.J.